KAREN P. HEWITT
United States Attorney
NICOLE ACTON JONES
Assistant U.S. Attorney
California State Bar No. 231929
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5482
E-mail: nicole.jones@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>KARLA EDITH BARBA (1),<br>KARINA GONZALEZ-GAETA (2),<br><br>Defendant. | Criminal Case No. 08CR2110-JM<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTIONS:**<br><br>**(1) TO COMPEL DISCOVERY; AND**<br>**(2) FOR LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: July 25, 2008<br>Time: 11:00 a.m.<br>Court: The Hon. Jeffrey T. Miller |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Nicole Acton Jones, Assistant United States Attorney, and hereby files its Response and Opposition to Defendants' Motions to Compel Discovery and For Leave to File Further Motions.[1/] This response is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

//

//

//

//

[1/] Both Defendants filed similar discovery motions. The Government's response applies equally to both motions.

## I

## STATEMENT OF THE CASE

On June 25, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendants Karla Barba and Karina Gonzalez-Gaeta ("Defendants") with Possession of Cocaine with Intent to Distribute and aiding and abetting, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2. On June 26, 2008, Defendants were arraigned on the Indictment and entered pleas of not guilty.

## II

## STATEMENT OF FACTS

On June 10, 2008, ICE agents received information that a 2002 white Chevrolet S-10 pickup truck with Sonora/Mexico license plate ZWD3962 would be entering the United States through the Calexico East port of entry the next morning. On the morning of June 11, 2008, ICE agents, along with officers from other agencies, conducted enforcement operations and identified the S-10 pickup truck at about 8:42 a.m. Agents maintained constant surveillance on the vehicle after it entered the United States.

Agents followed the vehicle from the port to Direct Auto Plaza in El Centro, California. The vehicle was then driven to Millie's restaurant and then Lucky's restaurant, both in El Centro. Agents observed that two Hispanic females, later identified as Defendants, were waiting for the vehicle at the edge of the Lucky's parking lot. After the vehicle parked, Defendants immediately approached and spoke to the driver. The driver then exited the vehicle and the Defendants got inside the vehicle. Defendant Barba then drove the vehicle, with Defendant Gonzalez as her passenger, to the Wal-Mart in Calexico. During the drive to Calexico, Defendant Barba drove the vehicle in a manner consistent with counter-surveillance driving.

After arriving at Wal-Mart, Defendants entered the store and appeared to be waiting for someone rather than shopping. After two hours, they received a phone call, after which they immediately left the store and drove the vehicle to the Toys R Us parking lot. At this point, agents made contact with Defendants. At about 12:20, a narcotics detector dog was used to screen the vehicle and the dog alerted to the passenger side floor area. Agents found a travel bag behind the passenger side bench seat

containing numerous packages. The vehicle and Defendants were then transported to the Calexico West port of entry for further inspection. At the port, agents found three more bags containing packages behind the bench seat. Agents also found a non-factory compartment in the bed of the vehicle. A field test on one of the packages tested positive for cocaine. A combined total of 88 packages weighing 99.72 kilograms (218.38 pounds) were found in the vehicle.

At about 1:40, Defendant Barba was advised of her Miranda rights and she elected to make a statement. Barba stated that a Hispanic male known to her as "Efrain Martinez" had called her at 6:00 a.m. and asked her for to drive a vehicle from El Centro to Calexico as a favor. Barba agreed to do so. Barba stated that she and Gonzalez then crossed through the Calexico West POE on foot and took a taxi to Lucky's in El Centro where they took the vehicle from an unknown person and drove it to Wal-Mart in Calexico. Barba admitted that during the drive she told Gonzalez that she thought the vehicle contained drugs and Gonzalez thought so too. Barba stated that after arriving at Wal-Mart she waited for a person known to her as Banderas. Barba stated that she drove the vehicle to Toys R Us and was talking to Martinez, aka, Kiryto, when the agents arrived. Barba stated that she told Martinez "I am busted" in Spanish. Barba claimed she was not being paid to drive the vehicle.

At about 2:20, Defendant Gonzalez was advised of her Miranda rights and she elected to make a statement. Gonzalez stated that Efrain Martinez called Barba and told her to pick up a truck loaded with drugs at Lucky's in El Centro. Gonzalez stated that the truck would contain marijuana. Gonzalez stated that they drove the vehicle to Wal-Mart where a person named Banderas was supposed to pick up the vehicle. Gonzalez stated that when they were in the Toys R Us parking lot, Barba was talking to Martinez on the phone and told him that they were busted.

## III

## DEFENDANT'S MOTIONS

### A. MOTION TO COMPEL DISCOVERY

#### 1. Discovery in this Matter is Current

To date, the Government has provided Defendants with 53 pages of discovery and DVDs of their post-arrest statements. The discovery produced includes the final report of investigation, copies of documents located in the vehicle and on Defendant's person, and copies of the phone

numbers from Defendant Barba's telephones. The Government will also produce the DEA-7 lab report as soon as it is available. As of the date of this filing, the Government has received no reciprocal discovery.

**2. The Government Has and Will Continue to Comply With Its Discovery Obligations**

The Government recognizes and acknowledges its obligation pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. The Government has complied and will continue to comply with its discovery obligations going forward.

As to exculpatory information, the United States is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive or impeachment of any of its witnesses of which it becomes aware. An inquiry pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted. In this case, the Government will ask the affected law enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case.

The United States will provide a list of witnesses at the time the Government's Trial Memorandum is filed. The grand jury transcript of any person who will testify at trial will also be produced. The United States will produce any reports of experts that it intends to use in its case-in-chief at trial or such reports as may be material to the preparation of the defense.

The Government will furnish to Defendant a copy of her prior criminal record, if any, that is within the Government's possession, custody or control if the attorney for the Government knows–or through due diligence could know–that the record exists. Furthermore, pursuant to Federal Rules of Evidence 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of

admissibility or disclosure[.]"). If the Government intends to introduce TECS information as part of its case-in-chief at trial, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

To the extent Defendant requests specific documents or types of documents, the Government will continue to disclose any and all discovery required by the relevant discovery rules. Accordingly, the Government respectfully requests that no orders compelling specific discovery by the United States be made at this time.

**3. The Government Objects to Requests for Discovery That Go Beyond Any Statutory or Constitutional Disclosure Provision**

***a. Defendant's Statements***

The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." The United States has turned over investigative reports, including those which disclose the substance of Defendant's oral statements.

The United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made (i.e. statements that were not made in response to interrogation) by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

The United States also recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(B) to disclose relevant written or recorded statements by Defendant. The Government has disclosed the Defendants' recorded post-arrest statements.

***b. Rough Notes***

The United States will fully comply with its discovery obligations under the Jencks Act. The United States objects, however, to Defendant's premature request for the production of any rough

notes of United States' agents. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004). Moreover, the production of agents' notes related to Defendant's statements is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981).

In any case, production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Accordingly, although the United States will likely produce all Jencks material prior to eliciting a witness's testimony, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify. The United States will, however, take steps to preserve any rough notes that exist in this case.

***c. Reports***

Defendant requests production of all reports. As stated, the United States will comply with all of its discovery obligations, but the United States is only obligated to produce reports if those reports require production under Rule 16(a)(1), i.e. reports of a Defendant's statements, or under Brady or Jencks. See Rule 16(a)(2) ("Except as rule 16(a)(1) provides otherwise, this rule does not authorize disclosure or inspection fo reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.").

***d. Information that May Result in a Lower Sentence***

Without citation to any pertinent authority, Defendant Barba argues that because the Sentencing Guidelines are now advisory, the Government must disclose "any information whatsoever" because such information may somehow be relevant to sentencing under Rule 3553(a). Defendant's request is overbroad and premature.

***e. Impeachment Evidence***

Regarding prospective government witnesses, the Government will provide the defendant with the following items prior to any such witness's trial testimony:

(1) The terms of all agreements (or any other inducements) it has made with government witnesses, if they are entered into;

(2) All relevant exculpatory evidence concerning the credibility or bias of government witnesses as mandated by law; and,

(3) Any record of prior criminal convictions (of which the Government is aware) that could be used to impeach a government witness.

Furthermore, any uncharged prior misconduct attributable to government witnesses, all promises made to and consideration given to such witnesses by the Government, and all threats of prosecution made to government witnesses by the Government will be disclosed if required by the doctrine of Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 450 U.S. 150 (1972). The Government will not provide information which "arguably could be helpful or useful to the defense" because it does not meet the Brady standard.

As stated above, the Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government, however, objects to providing any evidence that a witness has *ever* used narcotics or other controlled substance, or has *ever* been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision.

***f. Informants/Cooperating Witnesses***

Defendant incorrectly asserts that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Rovario v. United States, 353 U.S. 53, 60-61 (1957). Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure at this point in the case. The United States will, however, make all required disclosures if an informant or confidential source testifies at trial in this matter.

***g. Witness Lists***

While the Government will supply a tentative witness list with its trial memorandum, it objects to providing addresses. See United States v. Steele, 785 F.2d 743, 750 (9th Cir. 1986); United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980); United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses). The Government also objects to any request that the United States provide a list of every witness to the crimes charged who will not be called as a United States witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(c)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).

***h. Personnel Records of Government Officers Involved in the Arrest***

Defendant has not cited any competent authority that requires the United States to produce all citizen complaints or internal affairs documents regardless of whether the complaint was substantiated. The United States has complied and will continue to comply with United States v.

Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

***i. Statements Relevant to the Defense***

The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent. In making this request, Defendant relies on United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982), overruled on other grounds by Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 1499 (1988), however, the Ninth Circuit holding was not so broad. In fact, the Ninth Circuit, interpreting Fed. R. Crim. P. 16, held: "We believe the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert." See Bailleaux, 685 F.2d at 1114 (emphasis added). Therefore, the United States will only disclose relevant statements made by Defendant pursuant to this request.

***j. Training of Relevant Law Enforcement Officers***

The Government objects to providing to Defendant a copy of all policies, training instructions, and manuals issued by all law enforcement agencies involved in this case. The requested policies, training instructions, and manuals are irrelevant and do not fall within the scope of Rule 16, or any other statutory or Constitutional disclosure provision. Even if one or more of the inspectors, officers, or special agents violated his or her own administrative regulations, guidelines, or procedures, such violations would not result in the exclusion of evidence if Defendant's Constitutional and statutory rights were not violated in this case. United States v. Caceres, 440 U.S. 741, 744 (1979); United States v. Hinton, 222 F.3d 664 (9th Cir. 2000).

***k. Performance Goals and Policy Awards***

The Government objects to providing Defendant with information regarding the agency standards used for measuring, compensating, or reprimanding the conduct of all law enforcement officers involved in this case. The requested information regarding the agency standards used for measuring, compensating, or reprimanding the conduct of the law enforcement officers is irrelevant and does not fall within the scope of Rule 16, exculpatory evidence under Brady, impeachment evidence under Giglio, or any other authority governing disclosure.

***l. TECS Reports***

The United States objects to providing Defendant with complete vehicle crossing reports from the Treasury Enforcement Communications System ("TECS"), as well as an explanation of the records. TECS reports are not subject to Fed. R. Crim. P. 16(c) because the reports are neither material to the preparation of the defense, nor intended for use by the United States as evidence during its case-in-chief. The TECS reports are not Brady material because the TECS reports do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If the United States intends to introduce TECS information at trial, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

***m. Narcotics Detector Dog***

Defendant requests discovery regarding the reliability of the narcotics detector dog that was used to screen Defendant's vehicle. In United States v. Cedano-Arellano, 332 F.3d 568 (2003), without citing any authority, the Ninth Circuit held that various records relating to a drug detector dog are discoverable for pretrial suppression motions under Rule 16 of the Federal Rules of Criminal Procedure, apparently under both subsections (a)(1)(E) and (a)(1)(F). Both require the United States to disclose to the defense documents (or test results) that are "material to the defense" (or that were intended to be used in the United States' case-in-chief).

Here, these records are neither material to the defense nor intended to be used by the United States in its case-in-chief. The United States is not relying on the dog alert to support the search of the vehicle. The search of the vehicle was valid as either a Terry stop or an "extended border" search, which means that the agents only required reasonable suspicion. See United States v.

Whiting, 781 F.2d 692, 695 (9th Cir. 1986). In this case, the reasonable suspicion to search the vehicle pre-existed the use of the dog and the officers had the authority to conduct a routine search of the vehicle regardless of the outcome of the dog screen. Defendants were detained pending the outcome of the search. Probable cause was not required to detain either of them. Defendants were only placed under arrest *after* multiple bags of cocaine were found behind the truck's bench seat. Therefore, the dog records are not material to the defense and the United States objects to production of the requested dog discovery.

**B. LEAVE TO FILE FURTHER MOTIONS**

The United States does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

**IV**

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that Defendant's motions be denied.

DATED: July 18, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ ***Nicole Acton Jones***
NICOLE ACTON JONES
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KARLA EDITH BARBA (1),<br>KARINA GONZALEZ-GAETA (2),<br><br>Defendant. | ) | Criminal Case No. 08CR2110-JM<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Frank Balistrieri
2. Elizabeth Barros

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 18, 2008.

/s/ ***Nicole Acton Jones***
NICOLE ACTON JONES
Assistant U.S. Attorney